Filed 12/17/20  P. v. Marquez CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>DAVID GREGORY MARQUEZ,<br><br>Defendant and Appellant. | F078242<br><br>(Fresno Super. Ct. Nos. F17901320, F17901318 & F18905146)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County.  David A. Gottlieb, Judge.

Jared G. Coleman, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Daniel B. Bernstein and Jennifer M. Poe, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Appellant and defendant David Gregory Marquez raises several issues in connection with three criminal cases in which he pleaded no contest. We accept the Attorney General's concession that imposition of sentence on a conviction for receiving stolen property must be stayed under Penal Code section 654,[1] and that the judgment should be conditionally reversed to allow for the court to apply section 1001.36. We reject the remainder of defendant's claims.

## BACKGROUND

On March 3, 2017, the district attorney filed two criminal complaints against defendant.

*Case No. F17901318*

The first complaint filed on March 3, 2017, charged defendant with assault with a deadly weapon (count 1; § 245, subd. (a)(1)), with a great bodily injury enhancement (§ 12022.7, subd. (a).) The complaint also alleged defendant had suffered a prior strike (§§ 667, subds. (b)-(i) & 1170.12, subds. (a)-(d)), and three prior prison term enhancements (§ 667.5, subd. (b).) The complaint alleged this assault occurred on February 25, 2017.

On April 25, 2018, defendant pleaded no contest to the assault with a deadly weapon charge and admitted the prior strike and three prior prison terms. The remaining allegation (i.e., the great bodily injury enhancement) was dismissed. The court gave an "indicated sentence" of six years, to be served concurrently with sentence in case No. F17901320 (described below).

*Case No. F17901320*

The second complaint filed March 3, 2017, charged defendant with unlawful driving or taking of a vehicle (count 1; Veh. Code, § 10851, subd. (a)), receiving stolen property (i.e., a vehicle) (count 2; § 496d, subd. (a)) and evading a police officer with

---

[1] All further statutory references are to the Penal Code unless otherwise noted.

2.

while driving with willful or wanton disregard for the safety or persons or property (count 3; Veh. Code, § 2800.2, subd. (a)). The complaint alleged counts 1 and 2 occurred on February 12, 2017, and that count 3 occurred on March 1, 2017. The complaint also alleged three prior prison term enhancements (§ 667.5, subd. (b)), and that defendant had suffered a prior strike (§§ 667, subds. (b)-(i) & 1170.12, subds. (a)-(d)).

On April 25, 2018, defendant pleaded no contest to all three counts, and admitted the prior strike and three prior prison terms, with a maximum exposure of nine years in state prison. Defendant's plea form indicated that the district attorney "does not oppose concurrent sentence."

*Case No. F18905146*

On July 31, 2018, the district attorney filed a criminal complaint charging defendant with carrying a concealed dirk or dagger (§ 21310.) The complaint also alleged three prior prison term enhancements (§ 667.5, subd. (b)), and that defendant had suffered a prior strike[2] (§§ 667, subds. (b)-(i) & 1170.12, subds. (a)-(d)).

On August 7, 2018, defendant pleaded no contest to carrying a concealed dirk or dagger and admitted the prior strike and three prior prison terms.

*Sentencing*

In case No. F17901318, the court sentenced defendant to three years for assault with a deadly weapon, doubled to six years for the strike prior. The court imposed a restitution fine of $1,800, a court security fee of $40, and a criminal conviction assessment fee of $30.

---

[2] However, the copy of the complaint in the appellate record contains a handwritten interlineation next to the strike allegation reading: "not a strike" followed by what appears to be initials. Another handwritten interlineation appears next to one of the prior prison term enhancements reading: "prior strike" again followed by what appears to be initials.

In case No. F17901320, the court sentenced defendant to two years on each of the three counts, to be served concurrently to the six-year term imposed in case No. F17901318. The court struck the prior strike conviction for purposes of sentencing in case No. F17901320. The court imposed a restitution fine of $600, and "[a]n additional fine of $600 will be imposed if a period of parole is ordered." The court also imposed a criminal conviction assessment fee of $120 and a court security fee of $90.

In case No. F18905146, the court sentenced defendant to a consecutive term of one year four months (double the midterm of eight months). The court imposed a restitution fine of $300, plus "[a]n additional fine" of $300 "if a period of parole is ordered." The court also imposed a court security fee of $40 and a criminal conviction assessment fee of $30.

The court stayed imposition of sentence on the three prior prison terms.

In total, defendant was sentenced to seven years four months in prison.[3]

Defendant did not lodge any objections to the imposition of the fines and fees in any of his cases.

*Request for Certificate of Probable Cause*

A request for certificate of probable cause was requested on defendant's behalf. The form provides a space to identify the "reasonable constitutional, jurisdictional or other grounds going to the legality of the guilty plea, no contest plea or probation violation admission proceeding are (*specify*)" In that space is the following handwritten text: "I am not sure that [defendant] wants to appeal. He told me to appeal his cases w/out providing me details. Because the 60 days expire on 10/7/18, [I] am filing this notice as is." The court denied the request for a certificate of probable cause on October 9, 2018.

---

[3] The court also imposed sentence in two misdemeanor cases that are not subjects of the present appeal.

4.

**FACTS**

*Case No. F17901318*[4]

On February 25, 2017, defendant was at his friend Sylvia P.'s residence. At around 10:10 p.m., defendant asked Sylvia if he could use her vehicle. She replied, " '[N]o.' " Defendant asked several more times and again Sylvia refused. Defendant became upset and walked towards Sylvia's bedroom. Sylvia told defendant he needed to leave. Defendant suddenly turned around and sliced Sylvia on her cheek with a box cutter. Sylvia ran into the living room and told her daughter to call 911. Sylvia's daughter attempted to call 911, but defendant grabbed the phone out of her hands.

Sylvia struck defendant with a screwdriver, causing him to flee. As defendant fled, he slashed the tires on Sylvia's vehicle. He also threw Sylvia's daughter's phone at Sylvia, but it landed in front of her.

*Case No. F17901320*

Cynthia C. discovered her vehicle was missing from her apartment parking stall around noon on February 12, 2017. She reviewed surveillance cameras and observed defendant driving her vehicle away. Cynthia sent a text message to defendant telling him to return her vehicle. Defendant replied that he would return her vehicle if Cynthia's husband returned his cell phone. Cynthia located her vehicle about two weeks later.

On March 1, 2017, defendant was located driving a different vehicle. A police officer attempted a traffic stop, but defendant drove over a concrete island and fled. The officer pursued defendant. Defendant continued to flee, driving at speeds of 60 to 70 miles per hour, ran a red light, and failed to stop at a stop sign. Eventually, officers were able to cause defendant to "spin out." He was then arrested.

---

[4] Both parties cite to the probation report for the underlying facts of cases Nos. F1790318 and F17901320. The probation report relies on the underlying police reports. We will do the same.

**DISCUSSION**

**I.      Defendant's Challenge to his Convictions Based on Taking and Receiving the Same Property are Foreclosed by his Failure to Obtain a Certificate of Probable Cause**

Defendant argues that he was improperly convicted of taking and receiving the same property. We conclude this contention is not cognizable because defendant did not obtain a certificate of probable cause.

A defendant is statutorily prohibited from appealing a judgment of conviction upon a plea of nolo contendere without first obtaining a certificate of probable cause. (§ 1237.5; see *People v. Cuevas* (2008) 44 Cal.4th 374, 379 (*Cuevas*).) This prohibition applies to a defendant who, after pleading no contest, "contends the judgment of conviction must be vacated for the reason that 'one may not be convicted of stealing and of receiving the same property.' [Citations.]" (*People v. Jones* (1995) 33 Cal.App.4th 1087, 1091 (*Jones*).) That is precisely the contention defendant makes in the present appeal. Therefore, it is incognizable under section 1237.5 and *Jones*.

Defendant notes there is a split of authority on this issue. He cites *People v. Loera* (1984) 159 Cal.App.3d 992, which held that an analogous argument was – "in effect" – a claim that the sentence was unlawful. (*Id*. at pp. 997-998.) The court reasoned that since an unlawful sentence is a "jurisdictional defect," it is subject to correction whenever it comes to the attention of a reviewing court.

We cannot agree with *Loera*. A defendant's claim that he cannot be convicted of taking and receiving the same property is, necessarily, a challenge to those *convictions* rather than the resultant sentence. (*Jones*, *supra*, 33 Cal.App.4th at p. 1092.) The fact that a reversal of a conviction would necessarily extinguish the sentence attached to it does not transform an attack on the conviction into an attack on the sentence. "[T]he critical inquiry is whether a challenge to the sentence is *in substance* a challenge to the

6.

validity of the plea, thus rendering the appeal subject to the requirements of section 1237.5." [Citation.]" (*People v. Panizzon* (1996) 13 Cal.4th 68, 76.)

Moreover, even if defendant could be said to have raised a "jurisdictional defect," it would not render section 1237.5 inapplicable. The statute specifically and expressly applies to "jurisdictional … grounds." (§ 1237.5, subd. (a).) In other words, even if a jurisdictional defect is at issue, it must be raised via certificate of probable cause.

Nor can we agree with *People v. Corban* (2006) 138 Cal.App.4th 1111, which distinguished between appeals raising "purely legal argument[s]" versus appeals raising issues that are "at least partially factual." (*Id*. at pp. 1116-1117.) Nothing in the certificate of probable cause statute supports such a distinction. (§ 1237.5.)

Accordingly, we will follow *Jones*. Since defendant is raising an "issue affecting the validity of the plea," we will not consider the issue without a certificate of probable cause. (See Cal. Rules of Court, rule 8.304(b)(5).)

**II.    Defendant was not Required to Obtain a Certificate of Probable Cause to Raise his Section 654 Claim; We Thus Accept the Attorney General's Concession that the Imposition of Sentence on the Receiving Stolen Property Conviction Must be Stayed Under Section 654**

A.    Certificate of Probable Cause

Defendant next contends that his sentence for receiving stolen property in case No. F17901320 must be stayed under section 654. The Attorney General posits that this claim is also incognizable because defendant failed to obtain a certificate of probable cause.

"A defendant may not appeal 'from a judgment of conviction upon a plea of guilty or nolo contendere,' unless he has obtained a certificate of probable cause. [Citations.]" (*Cuevas*, *supra*, 44 Cal.4th at p. 379.) However, "postplea claims, including sentencing issues, that do not challenge the validity of the plea" are exempt from this certificate requirement. (*Ibid*.) Thus, "[f]or purposes of the certificate of probable cause requirement, the critical question is whether defendant's section 654 challenge to his

7.

sentence is in substance a challenge to the validity of his plea. [Citations.]" (*Id*. At p. 381.) Or, in contrast, is defendant's claim " 'merely that the trial court abused the discretion the parties intended it to exercise …' "? (*Id.* at p. 379.)

The Attorney General relies on *Cuevas* in arguing a certificate of probable cause is required here. In *Cuevas*, the defendant entered a plea agreement whereby the prosecutor would reduce two kidnapping for robbery counts (each carrying a life sentence) to simple kidnapping and dismiss 31 firearm allegations and replace them with a single weapon use enhancement. (*Cuevas*, *supra*, 44 Cal.4th at p. 383.) Under the original charges, the defendant would have faced two life sentences plus 37 years. (*Ibid*.) Under the charges contemplated by the plea agreement, the defendant faced a statutory maximum of 37 years eight months. (*Id.* at pp. 383-384.)

Cuevas argued he did not need a certificate of probable cause because he was not attacking the validity of his plea. He contended that his case was different from other cases where the defendants obtained a "sentence lid"[5] as part of their plea agreement. Those defendants agreed to a sentence lid that was less than their maximum statutory exposure as part of their plea bargain. Therefore, they were precluded from challenging the sentence on appeal because it was part of their plea. Cuevas argued that, unlike those defendants, his maximum sentence was just a reflection of the statutory maximum for the crimes he was pleading to.

The *Cuevas* court disagreed. While the maximum sentence component of the defendant's plea bargain did not reflect a reduction in the statutory maximum attached to the *reduced* charges; the defendant was still benefitting from a reduced sentence than what he otherwise would have faced if the original charges had been left in place. Thus, the statutory maximum for the remaining charges was " 'part and parcel' " of the plea

---

[5] A sentence lid is a maximum sentence that is lower than what the trial court could otherwise lawfully impose.

bargain and could not be challenged without a certificate. (*Cuevas*, *supra*, 444 Cal.4th at p. 384.)

The present case is distinguishable from *Cuevas*. Here, defendant's plea form did state a maximum sentence of nine years in prison. However, this maximum sentence of nine years was not the result of any reduction in charges as part of his plea bargain in case No. F17901320.[6] Instead, it was simply the statutory maximum attached to the crimes with which he was charged. In other words, it is the exposure defendant faced even if no plea bargain had been reached. Thus, it was not a negotiated aspect of the plea bargain (e.g., sentence lid), nor was it the *result* of any negotiated aspect of the plea bargain (e.g., dismissed/reduced charges). Therefore, we conclude that this case is not governed by *Cuevas*, but instead by the following general rule:

> "When the parties negotiate a *maximum* sentence, they obviously mean something different than if they had bargained for a *specific* or *recommended* sentence. By agreeing only to a maximum sentence, the parties leave unresolved between themselves the appropriate sentence within the maximum. That issue is left to the normal sentencing discretion of the trial court, to be exercised in a separate proceeding." (*People v. Buttram* (2003) 30 Cal.4th 773, 785.)

A defendant may challenge that sentencing discretion without a certificate of probable cause. (*People v. Buttram*, *supra*, 30 Cal.4th at pp. 785-786.)

Consequently, we conclude that no certificate of probable cause was required to raise this issue on appeal.

---

[6] Defendant simultaneously entered into plea bargains regarding other pending cases. In case No. F17901318, the plea bargain *did* include dismissal of a great bodily injury enhancement. Other charges were also dismissed in other cases.

While the various plea bargains were certainly related and clearly negotiated simultaneously, that does not change the fact that the nine-year maximum stated on the plea form for case No. F17901320 only related to the charges at issue in that particular case. And *those* charges were not dismissed or reduced as part of the bargain. Therefore, the recitation of the nine-year statutory maximum was clearly an advisement, not a "part and parcel" term of the plea bargain.

B.       We Accept the Attorney General's Concession that if We Reach the Section 654 Issue, the Conviction for Receiving Stolen Property Should be Stayed

The Attorney General concedes that if we reach the merits of defendant's section 654 claim, imposition of the sentence on count 2 of case No. F17901320 should be stayed under section 654. We accept the concession and will order the imposition of sentence on count 2 of case No. F1790320 stayed pursuant to section 654.

## III.    Defendant Forfeited Most of his Ability-to-Pay Challenges; the Remainder are Meritless

Defendant claims the court violated the due process and equal protection clauses of the federal and state constitutions when it imposed fines and fees without first finding he had the ability to pay them. We conclude defendant forfeited his ability-to-pay challenges in cases Nos. F17901320 and F17901318. We find the remaining ability-to-pay challenge (case No. F18905146) to be meritless.

A.       Defendant Forfeited his Ability-to-Pay Challenges in Cases Nos. F17901320 and F17901318

In cases Nos. F17901320 and F17901318, the court-imposed restitution fines above the statutory minimum of $300. (See former § 1202.4, subd. (b)(1).) Because these fines were above the statutory minimum, defendant could have made a nonfutile request for the court to consider his ability to pay. Yet, he failed to do so and thereby forfeited his ability-to-pay challenges in those cases. (See *People v. Lowery* (2020) 43 Cal.App.5th 1046, 1053-1054.)

However, in case No. F18905146, the court imposed a restitution fine of $300, the statutory minimum. (See former § 1202.4, subd. (b)(1).) Because the fine was set at the statutory minimum, defendant had no statutory right to raise an ability-to-pay challenge. (See former § 1202.4, subd. (c).) Therefore, we will proceed to the merits of defendant's claims as to case No. F18905146.

10.

B.	Defendant's Claim the Sentencing Court Violated the Federal and State Due Process and Equal Protection Clauses is Meritless

Defendant argues that the imposition of fines and fees without a finding he had the ability to pay violates the federal and state due process and equal protection clauses. We reject his argument.

" '[G]eneral "fairness" grounds of due process and/or equal protection principles do not afford a defendant a preassessment ability-to-pay hearing before a trial court imposes fines and fees on him or her.' [Citations.]" (*People v. Aviles* (2019) 39 Cal.App.5th 1055, 1068.) While the *People v. Dueñas* (2019) 30 Cal.App.5th 1157 interprets these constitutional provisions differently, we respectfully disagree with that opinion's assessment of the equal protection and due process clauses. (See *Aviles*, at pp. 1067-1068.)

Pursuant to *Aviles*, we reject defendant's claim that the imposition of fines and fees violated the federal and state due process and equal protection clauses.

## IV.	We Accept the Attorney General's Concession that the Judgment Should be Conditionally Reversed to Allow the Trial Court to Exercise its New Discretion to Order Pretrial Mental Health Diversion under Section 1001.36

"In June 2018, the Legislature enacted Penal Code sections 1001.35 and 1001.36, which created a pretrial diversion program for certain defendants with mental health disorders. [Citation.]" (*People v. Frahs* (2020) 9 Cal.5th 618, 624, fn. omitted (*Frahs*).) These statutes apply retroactively to defendants whose judgments were not final when the statutes took effect. (*Id.* at pp. 624-625.) Accordingly, conditional reversal and remand of said judgments is appropriate, at least where the record shows the defendant appears to suffer from a qualifying mental disorder.[7] (*Id.* at p. 640.)

---

[7] In the appellate record appears a "Routine Initial Psychiatric Evaluation" report dated June 1, 2014, prepared by the Department of Corrections and Rehabilitation. The report includes a section titled "DSM IV Diagnosis." In that section, next to the text "MOOD DISORDERS," the report reads: "Mood Disorder NOS vs PTSD vs Bipolar Disorder NOS."

Defendant argues he is entitled to such relief here and the Attorney General agrees. We accept the concession. However, "[w]e express no view regarding whether defendant will be able to show eligibility on remand or whether the trial court should exercise its discretion to grant diversion if it finds him eligible." (*Frahs*, *supra*, 9 Cal.5th at p. 625.)

## V.     Corrections to Abstract of Judgment

The Attorney General brings to our attention several errors in the abstract of judgment. Since the judgment is being conditionally reversed on other grounds and the matter remanded, we will direct the errors be corrected on remand.

The abstract of judgment indicates an upper term on count "A001" of case No. 17901318 (assault with a deadly weapon) when the middle term was actually imposed.[8] Additionally, the stayed prior prison term enhancements were omitted from the abstract of judgment. These errors should be corrected on remand.

### DISPOSITION

The judgment is conditionally reversed, and the matter is remanded for further proceedings.

On remand, the court shall order the imposition of sentence for count "B002," receiving stolen property stayed pursuant to section 654. The trial court shall cause a new abstract of judgment to be prepared reflecting the section 654 stay, and correcting the clerical errors identified in section V, *ante*, of this opinion.

On remand, the trial court shall conduct a mental health diversion eligibility hearing pursuant to section 1001.36 and *Frahs*, *supra*, 9 Cal.5th 618. If the trial court finds defendant meets the eligibility requirements of section 1001.36, the court may grant relief as provided in the statute. However, if the court finds defendant does not meet the

---

[8] The same error can be found on the sentencing minute order.

12.

requirements of section 1001.36, or if he does not successfully complete the diversion program, then his convictions and sentence shall be reinstated.

POOCHIGIAN, J.

WE CONCUR:

HILL, P.J.

SMITH, J.